UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ELIZABETH ENRIGHT KALLFELZ,          :
                                     :
        Plaintiff,                   :
                                     :
v.                                   :     CASE NO. 3:15CV1494(DFM)
                                     :
COMMISSIONER OF SOCIAL SECURITY,     :
                                     :
        Defendant.                   :

RULING ON PENDING MOTIONS

        Plaintiff, Elizabeth Enright Kallfelz, seeks judicial

review of the denial of her applications for disability

insurance benefits ("DIB") and supplemental security income

("SSI").[1]  Currently pending are plaintiff's motion to reverse

_____

        [1]Plaintiff filed applications for DIB and SSI on March 28,
2012, alleging a disability onset date of December 30, 2004.
Plaintiff later amended her onset date to January 1, 2011.  Her
applications were denied initially and upon reconsideration. (R.
20.)  Administrative Law Judge ("ALJ") Edward Sweeney held a
hearing on January 17, 2014.
        The ALJ found at step 1 that plaintiff engaged in
substantial gainful activity during the following periods: March
2011 through August 2011, and October 1, 2012 through December
2013. (R. 23.)  He noted, however, that there may be a
continuous 12 month period during which plaintiff did not engage
in substantial gainful activity and thus, he proceeded through
step 5 of the sequential evaluation process.  (R. 24.)  At step
2, the ALJ found that plaintiff has the following severe
impairments: affective disorder and attention deficit disorder.
(R. 24.)  He found at step 3 that plaintiff's conditions do not
meet or medically equal a listed impairment. (R. 24-25.)  He
determined that plaintiff retained the residual functional
capacity ("RFC") to perform a full range of work at all
exertional levels, but with the following nonexertional
limitations: she is limited to simple, routine and repetitive
tasks in a work environment free of fixed-pace production
requirements, involving only simple work-related decisions, with

the decision of the Commissioner of Social Security

("Commissioner") (doc. #22) and defendant's motion to affirm the

decision of the Commissioner.  (Doc. #23.)  Counsel filed a

statement of facts and medical chronology, which I incorporate

by reference.[2]  (Doc. #22-2, 23-2.)  For the following reasons,

plaintiff's motion is DENIED and defendant's motion is GRANTED.[3]

   I.   Legal Standard

     The standards for determining an individual's entitlement

to DIB and SSI, the Commissioner's five-step framework for

evaluating claims, and the district court's review of the final

decision of the Commissioner are well-settled.  I am following

those standards, but do not repeat them here.

---

few, if any, workplace changes.  She also should not have
contact with the public or more than occasional contact with
supervisors and coworkers. (R. 26.)  At step 4, the ALJ
determined that plaintiff has no past relevant work. (R. 29.)
At step 5, considering plaintiff's age, education, and RFC, the
ALJ found that jobs exist in significant numbers in the national
economy that plaintiff could perform. (R. 29.)  He thus
concluded that plaintiff is not disabled within the meaning of
the Social Security Act. (R. 30.)  Plaintiff appealed the ALJ's
decision to the Appeals Council, which denied her request for
review on August 18, 2015. (R. 1-6.)  Plaintiff timely appealed
to this court.
     [2]Plaintiff filed a medical chronology and summary of facts
with her motion to reverse.  (Doc. #22-2.)  Defendant adopts the
facts as presented by plaintiff, but provides a more detailed
summary of the facts, written in narrative format.  (R. 23-2.)
     [3]This is not a recommended ruling; the parties consented to
the jurisdiction of a magistrate judge. (Doc. #16); see 28
U.S.C. § 636(c); Fed.R.Civ.P. 73(b).

II.  Discussion

Plaintiff makes two arguments: (a) that the ALJ erred at step 3 by finding that plaintiff's impairments do not meet or medically equal a listed impairment; and (b) that the ALJ's RFC determination is not supported by substantial evidence.  I consider each argument in turn.

A. Step Three Determination

At step 3, the ALJ found that plaintiff's impairments do not meet or medically equal "one of the listed impairments" in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (R. 24.)  Specifically, he analyzed whether plaintiff's impairments meet or medically equal the severity of Listing 12.04 (affective disorders).  Plaintiff argues that the ALJ erred by failing to consider whether her schizoaffective disorder satisfies the paragraph "C" criteria of Listing 12.03 (schizophrenic, paranoid and other psychotic disorders).

First, although the ALJ did not explicitly discuss Listing 12.03 in his decision, the court infers from his step 3 finding that he considered whether plaintiff's impairments meet any "one of the listed impairments," not just Listing 12.04.  In any event, the paragraph "C" criteria for Listings 12.03 and 12.04 are the same.  To meet the paragraph C criteria under either listing, plaintiff must show a medically documented history of a chronic affective disorder/psychotic disorder of at least two

3

years' duration that has caused more than a minimal limitation of ability to do basic work activities, **plus** one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, ¶¶ 12.03(C), 12.04(C).

While the ALJ found that plaintiff "has experienced one to two episodes of decompensation, each of extended duration" (R. 26), her mental impairments have not caused more than a minimal limitation of her ability to do basic work activities.  In this regard, plaintiff is able to go to school, work part-time, live independently, perform household chores, and socialize with friends.  (R. 25.)  She reported having no difficulty completing tasks or following written instructions.  (R. 25.)  The ALJ found that plaintiff has only mild restrictions in activities of daily living and moderate difficulties in social functioning and concentration, persistence or pace.  (R. 25.)  She has no marked limitations in any area of functioning.

"[T]he burden is on the claimant to present medical findings that show his or her impairments match a listing or are equal in severity to a listed impairment." Stephens v. Colvin, 200 F. Supp. 3d 349, 358 (N.D.N.Y. 2016). Plaintiff has failed to meet her burden. The ALJ properly assessed the evidence and determined that none of plaintiff's impairments meet or medically equal a listed impairment.

B. RFC Determination

Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence.[4]

Plaintiff bears the burden of proving her RFC. See 20 C.F.R. §§ 404.1512(c); 416.912(c); Staggers v. Colvin, No. 3:14-CV-717 (JCH), 2015 WL 4751123, at *4 (D. Conn. Aug. 11, 2015) ("[T]he claimant bears the  burden of proving her RFC"); Hogan v. Astrue, 491 F. Supp. 2d 347, 356 (W.D.N.Y. 2007) ("[T]he only burden shift that occurs at step 5 is that we are required to prove that there is other work that you can do, given your RFC,

_____

[4]Plaintiff concedes that "the record establishes that she can engage in some level of work activity periodically, because she does." (Pl. Br., Doc. #22-2, p. 6.) She contends, however, that the ALJ did not adequately assess the periods of time when she suffers from increased stress, which reduces her level of functioning. Contrary to plaintiff's assertion, a review of the ALJ's decision reveals that he took into consideration plaintiff's periods of exacerbation, but found them to be "sporadic and short lived, with the exception of the August 2013 exacerbation, which was precipitated by multiple stressors." (R. 28.)

age, education, and work experience.  That shift does not place on us the burden of proving RFC.").

"[T]he court must decide whether the [RFC] determination is supported by substantial evidence . . . .  Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a 'mere scintilla.' . . . The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact . . . .  The court may not decide facts, reweigh evidence or substitute its judgment for that of the Commissioner." Gonzalez v. Apfel, 23 F. Supp. 2d 179, 189 (D. Conn. 1998) (citations omitted).  The court will not second-guess the ALJ's decision where he identified the reasons for his RFC determination and supported his decision with substantial evidence. Falcon v. Colvin, No. 5:12-CV-1164 (FJS), 2014 WL 1312362, at *4 (N.D.N.Y. Mar. 31, 2014) ("So long as the ALJ properly exercises his discretion, the court must limit its review to whether substantial evidence supports the ALJ's decision; the court may not second-guess the ALJ's balancing of the evidence.").

When reaching his RFC determination, the ALJ discussed the evidence of record, including plaintiff's own statements and the medical opinion evidence, over three single-spaced pages. (R. 27-29.)  He assigned great weight to the opinion of plaintiff's treating psychiatrist, Dr. Steven Katz; substantial weight to

plaintiff's therapist, Dr. Deborah Applefield; and generally adopted the opinions of the state agency medical consultants, Dr. Hedy Augenbaum and Dr. Robert Sutton.  The ALJ found that plaintiff retained the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she is limited to simple, routine and repetitive tasks in a work environment free of fixed-pace production requirements, involving only simple work-related decisions, with few, if any, workplace changes.  She also should not have contact with the public or more than occasional contact with supervisors and coworkers. (R. 26.)

Plaintiff does not disagree that Dr. Katz's opinion should be afforded significant weight, but she argues that his opinion does not support the ALJ's RFC determination.  The record reveals the contrary.  In June 2012, Dr. Katz opined that plaintiff had no problem performing work on a sustained basis, and only had a slight problem interacting appropriately with others in a work environment and handling frustration appropriately.  (R. 358-59.)  In October 2012, Dr. Katz once again stated that plaintiff had no problem performing work on a sustained basis.  (R. 353.)  Most recently, in his December 2013 report, Dr. Katz noted that while plaintiff was significantly impaired from April to August 2013, rendering her unable to work, she had recovered by August 28, 2013, and had no

7

limitations in understanding, remembering, and carrying out simple instructions; interacting with others; or responding appropriately to usual work situations or changes in routine. (R. 438.)  Dr. Katz stated that as of August 28, 2013, there was "no indication of cognitive impairments such as psychological slowing, impaired verbal memory, impaired concentration or attention . . . .  [S]he may have difficulty (mild) with complex tasks."  (R. 437.)  The ALJ relied on Dr. Katz's opinion "due to his area of expertise, the consistency of his opinion with his treatment notes and those of other treating sources, the longitudinal treatment history and the frequency of his contact with the claimant."  (R. 28.)  The ALJ properly assigned great weight to Dr. Katz's opinion, which supports his RFC determination.

The ALJ also relied on the observations of plaintiff's therapist Dr. Applefield, when making his RFC determination. Although Dr. Applefield indicated that plaintiff had some exacerbations, they were short-lived and usually improved by her next therapy session.  For example, at a session on September 9, 2011, Dr. Applefield wrote that plaintiff was "feeling (appropriately) sad" because her boyfriend was going to Israel until January.  (R. 369.)  By the next session on September 16, 2011, plaintiff reported a "stable mood" and that she was enjoying her math and science classes.  (R. 370.)  Overall, Dr.

Applefield's notes reflect that plaintiff had an adequate mood level, appropriate affect, and no acute distress.  From this opinion evidence, the ALJ reasonably determined that plaintiff's exacerbations are sporadic and short-lived.

The ALJ also relied upon the assessments of the non-examining state agency medical consultants, who opined that plaintiff could perform short, simple work tasks in an environment without strict time or production quotas and may have superficial, brief contact with others.  (R. 29.) Plaintiff does not challenge the ALJ's reliance on these opinions.

Lastly, when making his RFC determination, the ALJ relied upon plaintiff's own statements of her activities of daily living.  As discussed above, the ALJ noted that plaintiff is able to go to school, work part-time, live independently, perform household chores, and socialize with friends.  (R. 25.) She traveled to Israel to visit her boyfriend and enjoyed trying new foods and seeing a different geography and culture.  (R. 381.)  She also expressed interest in studying pharmacy, writing poetry, baking chocolate chip cookies, participating in competitive swimming, and cliff-jumping in Vermont.  (R. 367.) The ALJ concluded that plaintiff's daily activities "are not as limited to the extent one would expect given the complaints of disabling symptoms and limitation."  (R. 27.)

The ALJ identified the reasons for his RFC determination and supported his decision with substantial evidence.  There is no error.

III. <u>Conclusion</u>

For these reasons, plaintiff's motion to reverse the decision of the Commissioner (doc. #22) is DENIED and defendant's motion to affirm the decision of the Commissioner (doc. #23) is GRANTED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. <u>See</u> 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).

SO ORDERED at Hartford, Connecticut this 31st day of March, 2017.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge